## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

| | | |
|---|---|---|
| HEARTLAND RECREATIONAL VEHICLES, LLC; AIRSTREAM, INC.; CRUISER RV, LLC; DRV, LLC; and KEYSTONE RV COMPANY, for Itself and as Successor by Merger to DS Corp. d/b/a Crossroads RV and Dutchmen Manufacturing, Inc.,, | ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Case No. 3:19-cv-00923-RLM-MGG |
| v. | ) ) | |
| FRONTIER SUPPLY CHAIN SOLUTIONS, INC. and GRANYA RV IMPORTERS, INC, | ) ) ) | |
| Defendants. | ) ) | |

### Defendants' Answer to Second Amended Complaint

For their Answer against Plaintiffs' Second Amended Complaint,[1] Defendants Frontier Supply Chain Solutions, Inc. and Granya RV Importers, Inc. (collectively, "Defendants") state as follows:

### Introduction

1.    This is an action for breach of fiduciary duty, fraud, unjust enrichment, and indemnity.

---

[1] Following the Court's August 11, 2021 order partially granting Defendants' Motion to Dismiss (DE 50), there remain only two plaintiffs in this action: Cruiser RV, LLC and DRV, LLC. The Second Amended Complaint refers to all original plaintiffs as the "RV Companies"; however, Defendants' answers are tailored to the remaining plaintiffs, Cruiser RV, LLC and DRV, LLC, and will refer to them together as "Plaintiffs."

**ANSWER:**   Defendants admit that Plaintiffs purport to bring an action for breach of fiduciary duty, fraud, unjust enrichment, an indemnity. Defendants deny the bases for any such action.

2.   The RV Companies manufacture and sell recreational vehicles and parts (collectively "RVs") through their network of dealers within the United States and Canada.

**ANSWER:**   Defendants admit Plaintiffs DRV, LLC and Cruiser RV, LLC manufacture and sell RVs in the United States and sell RVs in Canada. Except as otherwise admitted, denied.

3.   Frontier is a customs brokerage and trade consulting company. It has a team of experts who advise companies on how to properly import goods into Canada.

**ANSWER:**   Defendant Frontier admits that it is a customs broker and trade consulting company for the purposes of importing other companies' goods into Canada. Except as otherwise admitted, denied.

4.   Frontier has handled importing RVs into Canada for the RV Companies as the RV Companies' agent, earning millions of dollars from the RV Companies for doing so.

**ANSWER:**   Defendant Frontier admits it had a business relationship with the Plaintiffs assisting them with the import of their goods into Canada. Except as otherwise admitted, denied.

5.   Under the structure Frontier set up for the RV Companies, Frontier would invoice the RV Companies, in U.S. dollars, for the Canadian goods and services tax ("GST/HST") due on the RVs and, after converting those funds into Canadian dollars, pay the taxes to the Canadian government.

**ANSWER:**   Defendant Frontier admits it invoiced the Plaintiffs in U.S. currency, as requested by Plaintiffs, and paid all appropriate taxes to the Canadian government after exchanging those funds back into Canadian dollars. Except as otherwise admitted, denied.

2

6.      Unbeknownst to the RV Companies, however, Frontier was significantly "marking-up" the exchange rate it was using between the Canadian dollar and the U.S. dollar when invoicing the RV Companies for GST/HST—resulting in millions of dollars of overpayments that the RV Companies made to Frontier.

**ANSWER:**    Defendants deny the allegations in this paragraph.

7.      Unlike the brokerage fee that Frontier charged the RV Companies, the mark-up was not disclosed as a separate line item on the Frontier invoices; rather, it was just included as part of the amount Frontier invoiced the RV Companies for GST/HST.

**ANSWER:**    Defendants deny the allegations in this paragraph.

8.      When the RV Companies noticed that something was not right about the exchange rate that Frontier was using in its invoices, Frontier claimed that the mark-up was just a "hedge" to cover its losses due to currency fluctuations between when Frontier billed the RV Companies and when it received the RV Companies' payments. Frontier also told the RV Companies not to worry about its "hedge" because the RV Companies could recover those funds as an input tax credit from the Canadian government.

**ANSWER:**    Defendants admit only that invoices accounted for losses due to currency fluctuations. Defendants deny the remaining allegations in this paragraph.

9.      Relying on these representations, the RV Companies continued to pay Frontier the amounts listed on Frontier's invoices and claim input tax credits based on the "Total GST" listed in Frontier's invoices, which included Frontier's mark-up.

**ANSWER:**    Defendants deny this allegation insofar as it alleges any wrongdoing or insinuates Defendants made any false or misleading representations. Defendants are without sufficient knowledge to admit or deny the remaining allegations in this paragraph.

10.     As a result, Frontier managed to create a significant profit center by marking-up the currency exchange rate as part of its GST/HST invoicing.

**ANSWER:**     Defendants deny the allegations in this paragraph.

11.     The Canadian government, however, now wants the profits Frontier made by marking-up the currency exchange rate. After auditing and assessing each of the RV Companies, the Canadian government has disallowed input tax credits that the RV Companies took for Frontier's mark-up, and the Canadian government is seeking payment of those funds from the RV Companies.

**ANSWER:**     Defendants deny this allegation insofar as it alleges any wrongdoing or insinuates Defendants made any false or misleading representations. Defendants are without sufficient knowledge to admit or deny the remaining allegations in this paragraph.

12.     In addition to profiting off of its mark-up on the exchange rate and misrepresenting what it was doing, Frontier provided the RV Companies with negligent, inaccurate, and incomplete advice regarding GST/HST for the purpose of selling their structure for importing RVs into Canada, resulting in the RV Companies facing tens of millions of dollars of tax reassessments by the Canada Revenue Agency.

**ANSWER:**     Defendants deny this allegation insofar as it alleges any wrongdoing or insinuates Defendants made any false or misleading representations. Defendants further deny the allegations insofar as they insinuate Defendants provided Plaintiffs with any tax advice; Defendants are not in the business of providing tax advice. The remaining allegations are legal conclusions which do not warrant a response. To the extent a response is required, the allegations are denied.

20815498v1

13.     The RV Companies have filed this lawsuit to make them whole for the damage done by Frontier's misrepresentations. The RV Companies also seek indemnification for the tax assessments they have paid or will have to pay to the Canadian government as a result of Frontier's negligent, inaccurate, and incomplete advice.

**ANSWER:**     Defendants deny the allegations in this paragraph. Specifically, Defendants deny the allegations insofar as they allege any wrongdoing or liability.

### Jurisdiction and Venue

14.     The RV Companies manufacture and sell RVs through their network of dealers within the United States and Canada. They are all subsidiaries of Thor Industries, Inc. but in practice operate as independent companies.

**ANSWER:**     Defendants deny DRV, LLC and Cruiser RV, LLC manufacture RVs in Canada and admit the remaining allegations.

15.     Heartland Recreational Vehicles, LLC is an Indiana limited liability company with its principal place of business in Elkhart, Indiana. Heartland's sole member is Towable Holdings, Inc., a Delaware corporation with its principal place of business in Elkhart, Indiana.

**ANSWER:**     Heartland Recreational Vehicles, LLC is no longer a party to this action; Defendants are without sufficient knowledge to admit or deny the facts alleged in this paragraph.

16.     Keystone RV Company is incorporated in Delaware and has its principal place of business in Goshen, Indiana. Keystone RV Company is the successor by merger to Dutchmen Manufacturing, Inc. and DS Corp. d/b/a Crossroads RV.

**ANSWER:**     Keystone RV Company is no longer a party to this action; Defendants are without sufficient knowledge to admit or deny the facts alleged in this paragraph.

20815498v1

17.     Cruiser RV, LLC and DRV, LLC are Indiana limited liability companies with their principal places of business in Howe, Indiana. Cruiser's and DRV, LLC's sole member is Heartland Recreational Vehicles, LLC.

**ANSWER:**   Defendants are without sufficient knowledge to admit or deny the facts alleged in this paragraph.

18.     Airstream, Inc. is incorporated in Nevada and has its principal place of business in Jackson Center, Ohio.

**ANSWER:**   Airstream, Inc. is no longer a party to this action; Defendants are without sufficient knowledge to admit or deny the facts alleged in this paragraph.

19.     Frontier Supply Chain Solutions, Inc. is a privately held corporation with its principal place of business in Winnipeg, Manitoba. Frontier is organized under the laws of Canada and governed by the Canada Business Corporations Act. Corporate activities are directed, controlled, or coordinated from Manitoba, Canada. With offices in Winnipeg, Toronto, Chicago, Seattle, and Los Angeles, Frontier is a full-service provider of logistics, trade consulting, and U.S. and Canadian customs brokerage services. It maintains a fast-paced, cross-border logistics network moving goods within and across North America and Canada while providing efficient warehousing and customs brokerage. Frontier is a Canadian citizen for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

**ANSWER:**   Frontier admits that it is a Canadian citizen for purposes of diversity jurisdiction under 28 U.S.C. § 1332. The remainder of this paragraph contains multiple and distinct allegations and fails to comply with Federal Rule of Civil Procedure 8(d)(1)'s requirement that each allegation must be "simple, concise, and direct."

20815498v1

20.     As part of Frontier's work on behalf of the RV Companies, Frontier's officers and agents have regularly come to Elkhart, Indiana, to transact business with the RV Companies. All in-person meetings between the RV Companies and Frontier have occurred in Indiana.

**ANSWER:**   Defendants are without sufficient knowledge to admit or deny the facts alleged in this paragraph.

21.     Frontier also operates a recreational vehicle import business through its wholly owned subsidiary, Granya RV Importers Inc., a shell corporation organized under the laws of Canada and governed by the Canada Business Corporations Act, with its principal place of business in Winnipeg, Manitoba. Granya is a Canadian citizen for purposes of diversity jurisdiction under 28 U.S.C. § 1332. Corporate activities of Granya are directed, controlled, or coordinated from Manitoba, Canada.

**ANSWER:**   Granya admits it is a Canadian citizen for purposes of diversity jurisdiction under 28 U.S.C. § 1332. The remainder of this paragraph contains multiple and distinct allegations and fails to comply with Federal Rule of Civil Procedure 8(d)(1)'s requirement that each allegation must be "simple, concise, and direct."

22.     Frontier set up Granya solely to act as an importer of record for the RV Companies. Granya shares with Frontier:

a)     the same business addresses (310-555 Hervo Street, Winnipeg, Manitoba and 88 Fennell Street, Winnipeg, Manitoba);

b)     the same employees, officers, and directors (including Michael Butterfield, Dwight Casson, Maureen Magura, and John Quirke); and

c)     the same telephone and fax numbers as Frontier (204-784-4800 and 204-784-4803, respectively).

7

**ANSWER:**   Defendants deny the allegation that Granya was formed "solely" to act as importer of record for the Plaintiffs. Defendants admit Frontier and Granya share some addresses, employees, and contact information.

23.      Granya has no assets separate from Frontier, commingles its assets and business transactions with Frontier, and does not observe the corporate formalities separate and apart from Frontier. Unlike Frontier, Granya has no insurance.

**ANSWER:**   Defendants admit Granya has no insurance or assets separate from Frontier and denies the remaining allegations.

24.      In addition, Granya was woefully undercapitalized. Despite being liable for tens of millions in GST/HST tax as the importer of record for the RV Companies' units going into Canada, Granya had little or no assets and could not cover those tax liabilities. In 2014, Frontier discontinued billing the RV Companies through Granya altogether and only billed the RV Companies through Frontier despite Granya still being liable for all GST/HST tax payments to the Canadian government.

**ANSWER:**   Defendants admit Frontier began billing the Plaintiffs in or around 2014. Defendants deny the remaining allegations in this paragraph.

25.      Accordingly, Granya and Frontier should be treated as a single business enterprise.

**ANSWER:**   The allegation in this paragraph represents a legal conclusion, which does not require a response. Insofar as a response is required, Defendants deny the allegation.

26.      This Court has subject-matter jurisdiction over the RV Companies' claims under 28 U.S.C. § 1332(a)(2) because (i) the RV Companies are citizens of different states and the defendants are citizens of a foreign state and (ii) the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

8

**ANSWER:** Defendants admit this Court has subject matter jurisdiction over this complaint under 28 U.S.C. § 1332(a)(2).

27.     Venue of this action in the Northern District of Indiana, South Bend Division, is proper under 28 U.S.C. § 1391(b) because all or a substantial part of the events or omissions giving rise to the RV Companies' claims occurred in this district.

**ANSWER:** Defendants admit that venue in this district is technically proper under 28 U.S.C. § 1391(b); except as otherwise admitted, denied. Defendants do not waive their argument under the doctrine of *forum non conveniens* or 28 U.S.C. § 1404 that these claims should be brought in Manitoba, Canada for the convenience of the Court and the parties.

**General Allegations**

**A.**     ***The RV Companies hire Frontier to be their agent with respect to accounting for and paying GST/HST tax.***

28.     Importing products—and, in particular, vehicles of any kind—from the United States to Canada is not a simple process. It requires understanding Canada's import laws and policies on a whole host of issues, including the restrictions and regulations that apply to the goods to be imported; the permits and documents necessary to import the goods; and the tariffs, duties, and other taxes on the goods that must be collected, paid, and recorded.

**ANSWER:** This paragraph is not directed to either Defendant, states legal conclusions, and/or makes general observations; thus, this paragraph does not require a response. To the extent a response is required, Defendants admit that importing products into Canada from the United States implicates a host of Canadian import laws and policies. Except as otherwise admitted, denied.

9

29.     Because these issues can be confusing and difficult for even sophisticated businesses to navigate, many businesses that import goods into Canada hire a customs broker to be their agent and handle the importation process on their behalf.

**ANSWER:**    This paragraph is not directed to either Defendant and/or makes general observations; thus, it does not require a response. To the extent a response is required, Defendants are without knowledge to admit or deny the allegations in this paragraph.

30.     Before Frontier approached the RV Companies, the RV Companies had been allowing each of its Canadian dealers to handle importation issues on their own. As a result, each dealer had its own customs broker to handle the payment, collection, reporting, and remittance of Canadian GST/HST; there was no one company that had cornered the market on customs-broker services for importing RVs into Canada.

**ANSWER:**    Defendants are without knowledge to admit or deny the allegations in this paragraph.

31.     In or around 2011, Frontier approached the RV Companies and promoted that it could serve as the RV Companies' presence in Canada for compliance purposes as required by Transport Canada, while at the same time acting as the RV Companies' customs broker and clearing the units into Canada. Essentially, Frontier would become the RV Companies' one-stop shop for getting their units into Canada.

**ANSWER:**    Defendants admit they furnished a proposal to Cruiser RV, LLC in 2011 to contract with Defendants. Defendants are without sufficient knowledge to admit or deny the allegations as they relate to DRV, LLC. Except as otherwise admitted, denied.

32.     In order for Frontier's structure to work, however, Frontier advised the RV Companies that they had to make fundamental changes as to how they were doing business in

20815498v1

Canada. Whereas before the RV Companies left GST/HST collection to their dealers, Frontier advised the RV Companies that for Frontier's proposed structure for importing RVs into Canada to work, the RV Companies needed to register with the Canada Revenue Agency to collect GST/HST taxes and start collecting and paying those taxes to the Canadian government.

**ANSWER:**    Defendants deny the statement insofar as it insinuates Defendants provided Plaintiffs with any tax advice; Defendants are not in the business of providing tax advice. Defendants are without sufficient knowledge to admit or deny the remaining allegations.

33.    When the RV Companies questioned Frontier's proposed structure, Frontier reassured the RV Companies that it had a ruling from the Canada Revenue Agency, advice from Frontier's accounting firm, and its lawyers that its strategy was correct. Frontier made numerous representations about its knowledge, skill, and experience in that area and the diligence Frontier had done in researching the structure it was recommending that the RV Companies use.

**ANSWER:**    Defendants deny the statement insofar as it insinuates Defendants provided Plaintiffs with any tax advice; Defendants are not in the business of providing tax advice. Defendants are without sufficient knowledge to admit or deny the remaining allegations in this paragraph.

34.    Frontier also vigorously disputed advice the RV Companies received from one of Frontier's competitors, who had told the RV Companies that they would not need to register for, and collect, GST/HST. Frontier told the RV Companies that its competitor's advice was wrong, and that the RV Companies needed to register for and collect GST/HST.

**ANSWER:**    Defendants are without sufficient knowledge to admit or deny the allegations in this paragraph.

11

35.     Relying on Frontier's advice, the RV Companies decided to go with Frontier's structure and register for and collect GST/HST.

**ANSWER:**     To the extent this allegation represents a legal conclusion, it does not require a response. Defendants otherwise deny the allegations in this paragraph.

36.     Frontier advised the RV Companies that it would structure the import arrangements between the RV Companies and their Canadian dealers to minimize brokerage charges and to seamlessly handle the payment, collection, reporting, and remittance of Canadian GST/HST.

**ANSWER:**     Defendants are without sufficient knowledge to admit or deny the allegations in this paragraph.

37.     Frontier advised the RV Companies on how to register for GST/HST purposes with the Canadian government, how to import products into Canada, how to account for the GST/HST payable on the products' importation into Canada, how to charge and collect GST/HST from the RV Companies' Canadian dealers, how to remit and report the GST/HST collected from the Canadian dealers, and whether the RV Companies could claim input tax credits from the Canadian government for the GST/HST they had paid upon importation.

**ANSWER:**     Defendants deny the statement insofar as it insinuates Defendants provided Plaintiffs with any tax advice; Defendants are not in the business of providing tax advice. Defendants are without sufficient knowledge to admit or deny the remaining allegations in this paragraph.

38.     Specifically, Frontier advised the RV Companies that:

a)     the RV Companies were eligible to claim input tax credits from the Canadian government;

12

20815498v1

b)      the GST/HST rate that the RV Companies should pay was based on the provincial rate where the recipient of the goods resided, as opposed to the rate in the province were the goods entered Canada; and

c)      that GST/HST should not be charged on international freight.

**ANSWER:**      Defendants deny the statement insofar as it insinuates Defendants provided Plaintiffs with any tax advice; Defendants are not in the business of providing tax advice. Defendants are without sufficient knowledge to admit or deny the remaining allegations in this paragraph and its subparts.

39.      Frontier told the RV Companies that its recommendations were not only supported by a ruling from the Canada Revenue Agency, but were also approved by Frontier's accounting firm and its attorneys. Frontier also offered interpretations of the applicable tax legislation and Canada Revenue Agency rulings and GST Policy Statements to support its plan, and it told the RV Companies that it had done due diligence and that it had the best plan.

**ANSWER:**      Defendants deny the statement insofar as it insinuates Defendants provided Plaintiffs with any tax advice; Defendants are not in the business of providing tax advice. Defendants are without sufficient knowledge to admit or deny the remaining allegations in this paragraph.

40.      Relying on Frontier's representations about its skill and experience, and the diligence Frontier had done in vetting the importation process that Frontier was advising the RV Companies to adopt, the RV Companies hired Frontier and followed its advice.

**ANSWER:**      To the extent this allegation is a legal conclusion, it does not require a response. Defendants otherwise do not have sufficient knowledge to admit or deny the allegations in this paragraph.

13

41.     In 2012, at various times, the RV Companies executed representation agreements with Frontier making Frontier the RV Companies' agent for purposes of "dealing with all matters" on the RV Companies' "behalf relating to the accounting, payment, and refund of customs and/or excise duties, excise tax, sales tax and goods and services tax [GST]" with respect to the RV Companies' products.

**ANSWER:**     Defendants are without sufficient knowledge to admit or deny the allegations in this paragraph.

42.     As an agent of the RV Companies, Frontier reported and remitted taxes and duties to the Canadian government on behalf of the RV Companies.

**ANSWER:**     Defendants admit Frontier remitted payments to the Canadian government on behalf of Plaintiffs. Defendants deny an agency relationship with Plaintiffs. Except as otherwise admitted, denied.

**B.      *Frontier bilks the RV Companies out of millions of dollars by marking up the currency conversion rates for GST/HST.***

43.     Following Frontier's advice, the RV Companies registered for GST/HST purposes, began charging and collecting GST/HST from its Canadian dealers, and began filing monthly GST/HST returns in which the RV Companies claimed input tax credits from the Canadian government based on Frontier's advice.

**ANSWER:**     Defendants are without sufficient knowledge to admit or deny the allegations.

44.     For each of the RV Companies' units entering Canada, the Canadian government levied GST/HST in Canadian dollars at the time the unit crossed the border. Because it was a customs broker, Frontier did not have to pay GST/HST at that time; the GST/HST went on the owed side of Frontier's balance sheet and had to be paid at the end of each month.

14

**ANSWER:**   Defendants deny the allegations in this paragraph insofar as Frontier was never the importer of record for Plaintiffs. Granya admits only that it properly performed any and all of its requirements as importer of record pursuant to representation agreements with Granya customers. Except as otherwise admitted, denied.

45.     To have the funds to pay the GST/HST the Canadian government had levied, Frontier invoiced the respective RV Company for those funds as well as Frontier's fee for its services. After receiving payment from the RV Companies, Frontier then turned around and paid the GST/HST to the Canadian government.

**ANSWER:**   Defendants deny the allegations in this paragraph insofar as Frontier was never the importer of record for Plaintiffs. Granya admits only that it properly performed any and all of its requirements as importer of record pursuant to representation agreements with Granya customers. Except as otherwise admitted, denied.

46.     When Frontier sent each invoice to the RV Company, it converted the Canadian dollar amount of the GST/HST that it had been billed into U.S. dollars at the RV Companies' request so that the RV Companies could pay in U.S. dollars.

**ANSWER:**   Defendants deny the allegations in this paragraph insofar as Frontier was never the importer of record for Plaintiffs. Defendants admit that Plaintiffs were billed in U.S. dollars, as requested by Plaintiffs.

47.     Relying on its agent and fiduciary to bill properly, the RV Companies paid Frontier in U.S. dollars the amounts that Frontier listed on the invoices.

**ANSWER:**   Defendants deny the allegation in this paragraph insofar as it asserts an agency or fiduciary relationship between Defendants and Plaintiffs. Defendants are otherwise without sufficient knowledge to admit or deny the remaining allegations in this paragraph.

20815498v1

48.     Frontier, however, was not billing the RV Companies properly. In addition to the GST/HST and the fee that the RV Companies had agreed to pay Frontier for its services, Frontier added on every invoice a premium mark-up to the daily bank exchange rate it used to convert the GST/HST amount from Canadian to U.S. dollars. Because Frontier was responsible for over $100 million in GST/HST payments on the RV Companies' behalf, Frontier's mark-up on the exchange rate resulted in millions of dollars in additional revenue to Frontier.

**ANSWER:**     Defendants deny all allegations within this paragraph.

49.     The representation agreements between the RV Companies and Frontier did not state that Frontier could or would collect a mark-up on the exchange rates Frontier was using to calculate GST/HST. And when Frontier started its practice of adding a premium mark-up to the exchange rate, it did not tell the RV Companies that it was doing so.

**ANSWER:**     Defendants deny all allegations within this paragraph.

50.     A few representatives of the RV Companies, however, discovered that something appeared to be wrong with the exchange rates used in Frontier's invoices. When they confronted Frontier about it, Frontier made two material misrepresentations. First—rather than admit that it was profiting off of a premium mark-up on the exchange rates—Frontier claimed that it was simply "hedging" to mitigate losses Frontier suffered due to currency fluctuations in the exchange rate between when Frontier invoiced the RV Companies and when Frontier collected the funds. Second, Frontier told the RV Companies that its "hedge" did not affect them because it was recoverable as an input tax credit.

**ANSWER:**     Insofar as the paragraph alleges Defendants made these allegations to Plaintiffs, Frontier admits the "hedge" was intended to mitigate losses from unpredictable currency fluctuations in the exchange rate caused by Plaintiffs insisting on being invoiced in U.S. dollars.

Defendants are without sufficient knowledge to admit or deny the remaining allegations in this paragraph.

51.      Those misrepresentations were not true. First, as Frontier knew, the premium mark-up that it was adding to the currency exchange rate was not necessary to cover any losses but was instead a massive profit center for Frontier, becoming a source of revenue for Frontier almost as large as the fees Frontier was legitimately charging the RV Companies for its services under the parties' Representation Agreements.

**ANSWER:**      Defendants deny the allegations in this paragraph.

52.      Second, because the mark-up represented revenue for Frontier and not reimbursement for Frontier's expenses, the mark-up was not recoverable as an input tax credit. The Canadian Revenue Agency has disallowed millions of dollars that the RV Companies took in input tax credits on the amounts the RV Companies paid Frontier as a result of Frontier's exchange-rate mark-up.

**ANSWER:**      Defendants are without sufficient knowledge to admit or deny the allegations in this paragraph. Defendants deny any allegation of wrongdoing or liability implied from the allegations in this paragraph.

53.      Frontier made its two material misrepresentations to representatives of the RV Companies on numerous occasions, including:

      a)      in a February 18, 2010 email from Frontier's Maureen Magura to Eric Meyer and Pam Glanders of Keystone RV Company;

      b)      in a February 19, 2010 email from Frontier's Michael Butterfield to Eric Meyers and Pam Glanders of Keystone RV;

      c)      in a memorandum dated May 29, 2014 from Frontier to DRV;

    d)       in a memorandum dated May 29, 2014 from Frontier to Cruiser RV;

    e)       in every invoice Frontier sent the RV Companies, as those invoices listed a "Total GST" figure that included Frontier's premium mark¬up on the exchange rate—thereby representing to the RV Companies that they could claim an input tax credit for the mark-up because it was included in "Total GST"; and

    f)       in phone conversations with Steve Mitchell of Heartland at various times.

**ANSWER:**    Defendants deny the allegations in this paragraph and its subparts. Specifically, Defendants deny any allegation pertaining to Heartland, Keystone, or Airstream, who are no longer parties to this action. Defendants deny any misrepresentations made to Plaintiffs in either the invoices or communications.

54.    Frontier profited enormously by marking up its exchange rates: it pocketed millions of dollars from the RV Companies to which it was not entitled.

**ANSWER:**    Defendants deny all allegations in this paragraph.

55.    Moreover, Frontier's use of inflated exchange rates caused a significant discrepancy in what the RV Companies were claiming as input tax credits on their monthly GST/HST returns with the Canadian government. Because Frontier included its premium markup in the "Total GST" listed on the invoices it sent to the RV Companies, the RV Companies used that figure when reporting the total GST it had paid to the Canadian government and claiming input tax credits.

**ANSWER:**    Defendants deny all allegations in this paragraph.

56.     That resulted in the RV Companies claiming and receiving much higher input tax credits than the tax that Frontier had actually reported and paid to the Canadian government on the RV Companies' behalf.

**ANSWER:**     Defendants deny the allegation that they caused Plaintiffs to claim and/or receive higher input tax credits. Defendants are without sufficient knowledge to admit or deny the remaining allegations in this paragraph.

57.     In other words, as a result of Frontier's exchange-rate overcharges, the RV Companies requested and received input tax credits from the Canadian government that were higher than the GST/HST that Frontier had actually paid on the RV Companies' behalf to the Canadian government. Frontier pocketed the difference, and the Canadian government is now seeking those funds from the RV Companies.

**ANSWER:**     Defendants deny the allegations in this paragraph.

***C.     Frontier's currency conversion scheme comes to light after the Canada Revenue Agency audits the RV Companies and reassesses the GST/HST that they owe.***

58.     Starting in December 2016 and continuing through January 2019, the RV Companies each received reassessments from the Canada Revenue Agency. Those reassessments were based on GST/HST audits of the RV Companies' GST/HST returns conducted by the Canada Revenue Agency for different years ranging between 2011 and 2016.

**ANSWER:**     Defendants are without sufficient knowledge to admit or deny the allegations in this paragraph. Defendants deny any allegation of wrongdoing or liability implied from the allegations in this paragraph.

59.     After reviewing the GST/HST the RV Companies had reported and paid during those years, the Canada Revenue Agency asserted that the RV Companies had massively overclaimed input tax credits.

20815498v1

**ANSWER:**   Defendants are without sufficient knowledge to admit or deny the allegations in this paragraph. Defendants deny any allegation of wrongdoing or liability implied from the allegations in this paragraph.

60.     Included in what the Canada Revenue Agency asserted had been overclaimed were the millions of dollars attributable to Frontier's upcharge on the currency conversion rate.

**ANSWER:**   Defendants are without sufficient knowledge to admit or deny the allegations in this paragraph. Defendants deny any allegation of wrongdoing or liability implied from the allegations in this paragraph.

61.     Contrary to what Frontier advised the RV Companies, the Canada Revenue Agency found that the RV Companies should not have taken input tax credits for money it paid to Frontier based on Frontier's premium mark-up on the currency conversion rate.

**ANSWER:**   Defendants deny the allegations in this paragraph insofar as they insinuate Defendants provided Plaintiffs with any tax advice; Defendants are not in the business of providing tax advice. Defendants deny any allegation of wrongdoing or liability implied from the allegations in this paragraph. Defendants are without sufficient knowledge to admit or deny the remaining allegations in this paragraph.

> **D.     The RV Companies also discover that Frontier had given them bad advice on how to handle GST/HST and the associated tax credits.**

62.     Frontier's exchange-rate scheme was not all that the RV Companies discovered when they investigated the Canada Revenue Agency's claims.

**ANSWER:**   Defendants deny the allegations in this paragraph insofar as it implies a "scheme," wrongdoing, or any liability by Defendants. Defendants are without sufficient knowledge to admit or deny the remaining allegations in this paragraph.

63.     The investigation also revealed that Frontier had given the RV Companies negligent, incorrect, and incomplete advice on how to import their products.

**ANSWER:**     Defendants deny the allegations in this paragraph.

64.     Among other things, in the reassessments, the Canadian government concluded that because the legal delivery and transfer of title to the RVs passed to the dealers in the United States, the RV Companies were not the proper importers for Canada Customs purposes, and instead the Canadian dealers were the proper importers.

**ANSWER:**     Defendants are without sufficient knowledge to admit or deny the allegations in this paragraph. Insofar as the allegations are based on a written document and to the extent the allegations of this paragraph contradict that written document, Defendants deny the allegations. Defendants deny any allegation of wrongdoing or liability implied from the allegations in this paragraph.

65.     This meant that, according to the Canada Revenue Agency, where legal delivery and transfer of title to the RVs passed to the dealers in the United States, the RV Companies could not claim any input tax credits whatsoever for the GST/HST paid on their behalf to import the RVs.

**ANSWER:**     Defendants are without sufficient knowledge to admit or deny the allegations in this paragraph. Insofar as the allegations are based on a written document and to the extent the allegations of this paragraph contradict that written document, Defendants deny the allegation. Defendants deny any allegation of wrongdoing or liability implied from the allegations in this paragraph.

66.     The Canada Revenue Agency's position is directly contrary to what Frontier had told the RV Companies about how to structure the importation process as well as the RV Companies' eligibility to claim the input tax credits.

**ANSWER:**     Defendants deny the allegations in this paragraph. Insofar as the allegations are based on a written document and to the extent the allegations of this paragraph contradict that written document, Defendants deny the allegations. Defendants deny any allegation of wrongdoing or liability implied from the allegations in this paragraph.

67.     The Canada Revenue Agency also asserted that the RV Companies should have collected GST/HST on freight—another position directly contrary to the advice that Frontier had provided.

**ANSWER:**     Defendants deny the allegations in this paragraph. Insofar as the allegations are based on a written document and to the extent the allegations of this paragraph contradict that written document, Defendants deny the allegations. Defendants deny any allegation of wrongdoing or liability implied from the allegations in this paragraph.

68.     Additionally, the Canada Revenue Agency asserted that the proper GST/HST rate that the RV Companies should have paid was based on the province into which the RV Companies' products entered Canada, as opposed to the province where the recipient of the goods resided. This too was contrary to the advice that Frontier had provided.

**ANSWER:**     Defendants deny the allegations in this paragraph. Insofar as the allegations are based on a written document and to the extent the allegations of this paragraph contradict that written document, Defendants deny the allegations. Defendants deny any allegation of wrongdoing or liability implied from the allegations in this paragraph.

69.     As a result of Frontier's bad advice, the RV Companies were faced with tens of millions of dollars in reassessments from the Canada Revenue Agency. The RV Companies have already paid millions of dollars as a result of those reassessments for those reassessments that have become final. For the rest of the reassessments, the RV Companies are attempting to mitigate their damages by objecting to and appealing them.

**ANSWER:**     Defendants deny any allegation of wrongdoing or liability from the allegations in this paragraph. Defendants are without sufficient knowledge to admit or deny the remaining allegations in this paragraph. Defendants deny any allegation of wrongdoing or liability implied from the allegations in this paragraph.

70.     While those objections are working their way through the Canadian court system, the RV Companies are incurring attorney's fees, court costs, security costs, and other fees and costs in challenging the Canada Revenue Agency's reassessments.

**ANSWER:**     Defendants are without sufficient knowledge to admit or deny the allegations in this paragraph.

71.     The RV Companies also face additional exposure to the Canada Revenue Agency for years that have not yet been reassessed by the Canada Revenue Agency but during which the RV Companies had acted pursuant to the same bad advice Frontier provided, and during which Frontier continued to collect funds from the RV Companies for reimbursement of the GST/HST for importation based on inflated exchange rates.

**ANSWER:**     Defendants deny the allegations in this paragraph.

72.     The RV Companies seek for Frontier to make them whole for the losses they have suffered as a result of Frontier's negligent, inaccurate, and incomplete advice and Frontier's unlawful premium mark-up on the exchange rates.

**ANSWER:**      Defendants deny the allegations in this paragraph.

73.      The RV Companies tendered a letter to Frontier, explaining the wrongdoing that they had discovered. In the letter, the RV Companies asked Frontier to indemnify them for their losses. To date, Frontier has not indemnified the RV Companies.

**ANSWER:**      Defendants deny any allegation of wrongdoing or liability implied from the allegations in this paragraph. Defendants are without sufficient knowledge to admit or deny the remaining allegations in this paragraph.

**Claims for Relief**

***Count I - Breach of Fiduciary Duty***

74.      The RV Companies incorporate the previous allegations into this paragraph.

**ANSWER:**      Defendants incorporate by reference all previous answers into this paragraph.

75.      Frontier agreed to act as an agent on behalf of the RV Companies on all matters relating to the products the RV Companies were importing into Canada, including all matters relating to the accounting, payment, and refund of GST/HST.

**ANSWER:**      Defendants denies the allegations in this paragraph.

76.      As an agent of the RV Companies, Frontier owed fiduciary duties to the RV Companies, including but not limited to:

   a)      A duty to act loyally for the RV Companies' benefit in all matters connected with the agency relationship and not to enrich itself at the RV Companies' expense;

   b)      A duty to act reasonably and to refrain from conduct that is likely to damage the RV Companies' business;

24

    c)        A duty to act with care, competence, and diligence, using the special skills and knowledge that Frontier possessed about importing products into Canada and paying GST/HST; and

    d)        A duty to disclose information to the RV Companies that the RV Companies should know.

**ANSWER:**    The allegations in this paragraph and its subparts are legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations. Specifically, Defendants deny they owed Plaintiffs a fiduciary duty.

77.    Frontier breached the fiduciary duties it owed the RV Companies in many ways, including but not limited to:

    a)        Enriching itself at the RV Companies' expense by marking up the currency exchange rate when billing the RV Companies for the GST/HST owed to the Canadian government;

    b)        Falsely telling the RV Companies that its mark-up was only a "hedge" to reimburse Frontier for currency losses, when in fact Frontier was profiting massively off of the inflated currency exchange rate;

    c)        Failing to disclose the mark-up as a separate line item on Frontier's invoices to the RV Companies;

    d)        Failing to reconcile what the RV Companies had paid to Frontier based on the premium mark-up on the exchange rate with the actual fluctuations in the exchange rate and failing to reimburse to the RV Companies the funds that were not necessary to cover Frontier's losses from exchange rate fluctuations;

e) Failing to advise the RV Companies that Frontier's mark-up of the exchange rates would result in a discrepancy between what Frontier actually paid the Canadian government and what the RV Companies claimed as input tax credits for GST/HST paid to import the RVs into Canada;

f) Failing to properly advise the RV Companies that they could not take an input tax credit on funds the RV Companies used to pay Frontier on the markup, and in fact representing exactly the opposite to the RV Companies;

g) Failing to act with care, competence, and diligence when advising the RV Companies about the process for importing products into Canada, registering for GST/HST purposes, and charging, collecting, reporting, and remitting that GST/HST; and

h) Providing negligent, inaccurate, and incomplete advice to the RV Companies, on which the RV Companies relied in conducting their business.

**ANSWER:** The allegations in this paragraph and its subparts are legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations. Specifically, Defendants deny they owed Plaintiffs a fiduciary duty.

78. As a result of Frontier's breaches of its fiduciary duties, the RV Companies have suffered damages.

**ANSWER:** The allegations in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendant deny the allegations. Specifically, Defendants deny they owed Plaintiffs a fiduciary duty.

### *Count II - Constructive Fraud*

79. The RV Companies incorporate the previous allegations into this paragraph.

**ANSWER:**   Defendants   incorporate   by   reference   all   previous   answers   into   this paragraph.

80.     As the RV Companies' agent with specialized skill and knowledge, Frontier had a special relationship with the RV Companies.

**ANSWER:**     The allegations in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations.

81.     Because of that special relationship, Frontier had a duty to disclose that it was using exchange rates in its invoices that were artificially inflated; that those inflated exchange rates were not necessary to cover Frontier's losses due to exchange rate fluctuations; and that the RV Companies could not claim an input tax credit for the amounts resulting from the premium mark-up that Frontier added to the currency exchange rates.

**ANSWER:**     The allegations in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations. Specifically, Defendants deny such a special relationship between them and the Plaintiffs.

82.     But Frontier failed to disclose those matters to the RV Companies.

**ANSWER:**   Defendants deny the allegations in this paragraph.

83.     As a result of Frontier's failure to disclose those matters, the RV Companies were damaged.

**ANSWER:**   Defendants deny the allegations in this paragraph.

### *Count III - Fraud*

84.     The RV Companies incorporate the previous allegations into this paragraph.

**ANSWER:**   Defendants   incorporate   by   reference   all   previous   answers   into   this paragraph.

85.     As alleged above, Frontier intentionally misrepresented to the RV Companies (1) that the mark-up on the currency exchange rate was necessary to cover Frontier's losses and (2) that the RV Companies could recover the amounts it paid Frontier for the mark-up as an input tax credit with the Canadian government.

**ANSWER:**     The allegations in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations.

86.     The RV Companies reasonably relied on the representations of its agent, Frontier, when paying the invoices that included the exchange-rate mark-up and in taking input tax credits for the amounts of the mark-up.

**ANSWER:**     The allegations in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations.

87.     But Frontier's representations were false, as Frontier well knew. The mark-up was not necessary to cover Frontier's losses, but in fact was a major profit center for Frontier. And the RV Companies could not take an input tax credit for the mark-up because Frontier had kept those funds and not paid them to the Canadian government as GST/HST.

**ANSWER:**     Defendants deny the allegations in this paragraph.

88.     As a result of Frontier's false representations, the RV Companies were damaged.

**ANSWER:**     The allegations in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations.

### *Count IV - Negligent Misrepresentation*

89.     The RV Companies incorporate the previous allegations into this paragraph.

**ANSWER:**     Defendants incorporate by reference all previous answers into this paragraph.

90.     Frontier presented itself as an expert customs broker with specialized, professional knowledge about importing and selling vehicles into Canada, including the application of GST/HST to importing and selling those vehicles in Canada.

**ANSWER:**     Defendants deny the allegations in this paragraph.

91.     As set forth in this complaint, Frontier negligently made representations about the process for importing products into Canada; the process for charging, collecting, reporting, remitting, and paying GST/HST; and how that process should be set up.

**ANSWER:**     The allegations in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations.

92.     Frontier also negligently misrepresented on its invoices the amount of U.S. dollars that the RV Companies had to pay Frontier to reimburse Frontier for paying GST/HST on the RV Companies' behalf and the "Total GST" that Frontier had paid on the RV Companies' behalf.

**ANSWER:**     The allegations in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations.

93.     In addition, Frontier negligently misrepresented that its "hedge" was necessary to cover its losses due to currency fluctuations and that the RV Companies could take input tax credits for funds it paid as a result of the "hedge."

**ANSWER:**     The allegations in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations.

94.     Those representations proved to be false and, as a result, the RV Companies were damaged.

**ANSWER:**     The allegations in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations.

***Count V – Indemnity***

95.      The RV Companies incorporate the previous allegations into this paragraph.

**ANSWER:**      Defendants incorporate by reference all previous answers into this paragraph.

96.      The parties' representation agreements included indemnity provisions that required Frontier:

> to indemnify, defend and hold harmless, to the fullest extent permitted by law, [the RV Companies] and [the RV Companies'] officers, directors, employees, agents, shareholders, successors and assigns from and against any claims, causes of actions, administrative proceedings and lawsuits, based upon an act or omission of [Frontier] that results in [one of the RV Companies] incurring any economic damage or loss, including by way of example, assessments, losses, settlement payments, attorney fees, costs and expenses, interest, fees, damage awards (including punitive damages), fines, penalties and/or other charges.

**ANSWER:**      Defendants deny the allegations in this paragraph. Insofar as the allegations are based on a written document and to the extent the allegations of this paragraph contradict that written document, Defendants deny the allegations.

97.      The indemnity provisions also specifically state that the "indemnity obligations shall include, without limitation, the costs of defending and/or counterclaiming or claiming over against any third parties."

**ANSWER:**      Defendants deny the allegations in this paragraph. Insofar as the allegations are based on a written document and to the extent the allegations of this paragraph contradict that written document, Defendants deny the allegations.

98.      The RV Companies have satisfied all conditions precedent to enforcing the indemnity provisions.

**ANSWER:**      The allegations in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations. Insofar as the

30

allegations are based on a written document and to the extent the allegations of this paragraph contradict that written document, Defendants deny the allegations.

99.     In addition to the parties' representation agreements, Frontier owed a common-law duty to indemnify the RV Companies.

**ANSWER:**     The allegations in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations.

100.     After discovering Frontier's wrongdoing, the RV Companies tendered a letter to Frontier, seeking indemnification for their losses.

**ANSWER:**     Defendants deny any allegation of wrongdoing or liability implied from the allegations in this paragraph. Defendants are without sufficient knowledge to admit or deny the remaining allegations in this paragraph.

101.     Frontier has not indemnified the RV Companies for any of their losses resulting from the Canada Revenue Agency's reassessments or Frontier's exchange-rate overcharges.

**ANSWER:**     Defendants admit they have not indemnified Plaintiffs. Defendants deny any allegation of wrongdoing or overcharging Plaintiffs.

102.     As a result, the RV Companies have been damaged.

**ANSWER:**     The allegations in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations.

### *Count VI - Unjust Enrichment/Quantum Meruit*

103.     The RV Companies incorporate the previous allegations into this paragraph.

**ANSWER:**     Defendants incorporate by reference all previous answers into this paragraph.

104.     The RV Companies have conferred a benefit on Frontier, namely, paying Frontier millions of dollars due to the inflated currency exchange rates in Frontier's invoices.

31

**ANSWER:**    The allegations in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations.

105.    Under the circumstances, it would be unjust to allow Frontier to keep that benefit.

**ANSWER:**    The allegations in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations.

WHEREFORE, the Defendants deny that Plaintiffs are entitled to recover any amount or any other relief whatsoever and respectfully requests that Plaintiffs' request be dismissed and judgment entered in favor of Defendants, assessing all costs of these proceedings against the Plaintiffs, and for all other relief that this Court may deem just and proper.

## AFFIRMATIVE DEFENSES

By asserting the following affirmative or additional defense, Defendants do not allege or admit that it has the burden of proof and/or the burden of persuasion with respect to any of these matters.

### FIRST DEFENSE

The Complaint and each claim contained therein fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

All or some of Plaintiffs' claims are barred by the applicable statute of limitations.

### THIRD DEFENSE

For the convenience of the parties, the witnesses, and the Court, and because all or some of Plaintiffs' claims are controlled by Canadian law, all or some of Plaintiffs' claims should be dismissed pursuant to the doctrine of *forum non conveniens*.

20815498v1

## FOURTH DEFENSE

To the extent Plaintiffs attempt to seek equitable relief, Plaintiffs are not entitled to such relief because they have an adequate remedy at law and cannot otherwise satisfy the elements of equitable relief.

## FIFTH DEFENSE

If Plaintiffs have sustained any damages, which Defendants deny, such were not caused or contributed to in any manner, by any fault, negligence, gross negligence, fraud, want of care, or lack of due diligence by Defendants, but were caused in whole or in part by the acts or omissions of others, whether individual, corporate or otherwise, whether named or unnamed in the Complaint, and for whose conduct Defendants are not responsible.

## SIXTH DEFENSE

If Plaintiffs have sustained any damages, which Defendants deny, such were the result of intervening or superseding events, factors, occurrences or conditions, which were in no way caused by Defendants or anyone for whom they would be vicariously liable.

## SEVENTH DEFENSE

Plaintiffs' damages, if any, were caused in whole or in part by Plaintiffs' failure to mitigate their damages.

## EIGHTH DEFENSE

If Plaintiffs have sustained any damages, which Defendants deny, Plaintiffs' damages were caused in whole or in part by Plaintiffs' own actions or inactions.

## NINTH DEFENSE

Plaintiffs have failed to plead fraud with the required particularity under Rule 9(b) of the Federal Rules of Civil Procedure.

20815498v1

**TENTH DEFENSE**

Defendants reserve the right to supplement or amend their affirmative defenses as needed

or warranted by ongoing investigation and discovery.

**<u>JURY DEMAND</u>**

Defendants demand a trial by jury of all issues so triable pursuant to Rule 38 of the Federal

Rules of Civil Procedure.

Dated:  <u>August 25, 2021</u>                                   Respectfully submitted,

                                                                        BARNES & THORNBURG LLP

                                                        By:  <u>*/s/ Sarah E. Brown*</u>

                                                        D. Randall Brown (15127-49)
                                                        *(randy.brown@btlaw.com)*
                                                        Barnes & Thornburg LLP
                                                        888 S. Harrison St.
                                                        Suite 600
                                                        Fort Wayne, Indiana 46802
                                                        Telephone:  (260) 423-9440
                                                        Facsimile:  (260) 424-8316

                                                        Alice J. Springer (25105-64)
                                                        *(alice.springer@btlaw.com)*
                                                        Barnes & Thornburg LLP
                                                        52700 Independence Court
                                                        Suite 150
                                                        Elkhart, Indiana 46514
                                                        Telephone:  (574) 237-1120
                                                        Facsimile:  (574) 237-1125

                                                        John A. Cullis (*pro hac vice*)
                                                        (*john.cullis@btlaw.com*)
                                                        Barnes & Thornburg LLP
                                                        One N. Wacker Dr.
                                                        Suite 4400
                                                        Chicago, Illinois 60606
                                                        Telephone: (312) 214-4572
                                                        Facsimile: (312) 759-5646

Sarah E. Brown (35715-53)
(*sarah.brown@btlaw.com*)
Barnes & Thornburg LLP
201 S. Main St.,
Suite 400
South Bend, Indiana 46601
Telephone:  (574) 237-1151
Facsimile:  (574) 237-1125

*Attorneys for Defendants*

20815498v1

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2021, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which sent notification of such filing to the

following:

Mark F. Criniti                                       Paul E. Harold
*mcriniti@southbank.legal*                    *pharold@southbank.legal*

Patrick J. O'Rear
*porear@southbank.legal*

BARNES & THORNBURG LLP

By: */s/ Sarah E. Brown*

20815498v1